IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-1770-WJM-MDB

DAVID SCOTT HAYDEN,

    Plaintiff,

v.

DANIEL KOGOVSEK, an attorney for The City of Pueblo, Colorado, a Colorado home rule municipality, and
SPACCAMONTI EXCAVATING, LLC, a Wyoming limited liability company

    Defendants.

## ORDER GRANTING CITY DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant City of Pueblo, Colorado's[1] (the "City") Motion to Dismiss ("Motion"). (ECF No. 104.) Plaintiff David Scott Hayden filed a response (ECF No. 109), and the City filed a reply (ECF No. 110). For the following reasons, the Motion is granted.

---

[1] In the Motion, the City explains that the First Amended Complaint ("FAC") names Defendant Daniel Kogovsek, attorney for the City, but does not include any claims against him. (ECF No. 104 at 2 n.1.) The City further states that "[a]ll subsequent filings by Plaintiff do not include Daniel Kogovsek as a Defendant in the caption," and "[t]he parties have discussed amending the caption to remove Daniel Kogovsek." (*Id.*)

In his response, Hayden does not address the City's comments regarding Mr. Kogovsek. (ECF No. 109.)

The City is correct that Hayden never names Mr. Kogovsek other than in the caption of the FAC, and Hayden—unhelpfully—ignores the City's attempt to identify the proper defendant.

## I. ALLEGATIONS IN THE FIRST AMENDED COMPLAINT[2]

### A.     Relevant Properties

Hayden is the owner of real property located at 600 Santa Fe Drive, Pueblo, Colorado 81006 ("Plaintiff's Property"). (¶ 7.) Hayden has owned Plaintiff's Property since 2000. Spaccamonti is the owner of real property abutting the southwest border of Plaintiff's Property. (¶ 8.) The Spaccamonti property does not have a legal address but can be identified as parcel number 1406302018, located in Pueblo, Colorado ("Spaccamonti Property"). (¶ 9.) Prior to 2015, the City was the owner of real property abutting a portion of the western border of the Spaccamonti Property. The property does not have a legal address but can be identified as parcel number 1406307010, located in Pueblo, Colorado ("City's Property").

A large, eighty-foot hill runs along the western border of Plaintiff's Property, including the border that abuts the Spaccamonti Property. (¶ 10.) The boundary line for Plaintiff's Property runs along the top of the hill. The Spaccamonti Property lies at the top of the hill and overlooks the Plaintiff's Property. (¶ 11.) There is no fence or other structure separating the properties. (¶ 12.)

Plaintiff's Property contains a stream that runs through the entire property. (¶ 13.) Because of this source of water, this property was historically home to wildlife and vegetation. Prior to 2015, Spaccamonti could not access its property, as the City Property blocked any form of ingress or egress to the Spaccamonti Property. (¶ 14.)

---

[2] The Background is drawn from the FAC. (ECF No. 89.) The Court assumes the allegations contained in the FAC to be true for the purpose of deciding the Motion. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Citations to (¶ __), without more, are references to the FAC.

    **B.**    **City Ordinance**

In 2014, Spaccamonti approached the City to inquire whether Spaccamonti could acquire the City Property, so that Spaccamonti could access its property.  (¶ 15.)

In 2015, the City passed Ordinance 8858 (the "Ordinance"), which states:

> In the Fall of 2014, Spaccamonti Excavating, Inc. approached the City to acquire certain real property in order to access its existing property . . . .  The City does not currently use this property and has no plans to use it in the future.  There currently exists drainage and illegal dumping problems on the property and adjacent properties.  Pursuant to the Improvement Agreement, Spaccamonti Excavating, Inc. has agreed to improve the property to alleviate some of the drainage issues and to fence the property to prevent illegal dumping.  The value of the improvements exceeds the value of the property.

(¶ 16.)  Exhibit C to the Improvement Agreement provides that Spaccamonti would, in part, "install culvert, install road, and fill in ravine," as well as "clean up open wastewater collection area, ridding stale water and mosquitos."  The "ravine" is located on the Plaintiff's Property.  (¶ 17.)  The City deeded the City Property to Spaccamonti.  (¶ 18; ECF No. 89-1.)

After the Ordinance was passed, Spaccamonti filled the ravine between the Spaccamonti Property and Plaintiff's Property.  The ravine was where storm water would drain to prevent flooding on nearby properties.  (¶ 19.)

    **C.**    **Alleged Illegal Dumping**

However, Hayden alleges that from 2015 to present, the illegal dumping has not been remedied.  (¶ 20.)  Instead, he alleges that it has gotten much worse, and Spaccamonti has mostly filled the ravine on Plaintiff's Property by dumping mountains of waste where the ravine once was.  Spaccamonti, using its heavy machinery, continuously pushes and dumps several tons of dirt, concrete slab, metal drainage

3

pipes, concrete support beams, trash, rubber tires, and other rubble on its property ("Dumping Activities"). The Dumping Activities are recurring.

Spaccamonti advertises on its website that it performs work for the City, including "Installation of sanitary sewer system installation and repair ranging from 4" to 8" schedule 40 sewer pipe at various locations around Pueblo." (¶ 21.) Hayden alleges that Spaccamonti then transports the waste from the City projects to the Spaccamonti Property. The waste is deposited along Plaintiff's Property line in huge mountains of rubble. When it rains or snows, the dumped materials cascade down the eighty-foot-high embankment, filling up the stream on Plaintiff's Property with mud, silt, rocks[,] and other debris, causing the stream to overflow and flood Plaintiff's Property and leaving debris and hazardous material in its wake. (¶ 22.) The materials also are disbursed about Plaintiff's Property. The materials are heavy (enough to crush a human on impact), have sharp edges, and are filled with hazardous waste.

Hayden alleges that he is unable to drive a car on Plaintiff's Property due to the excessive flooding. (¶ 23.) Wildlife can no longer be found on Plaintiff's Property. The shoulder of Santa Fe Drive is filled with water from the flooding. In addition, Hayden is frightened to walk on Plaintiff's Property due to fear that a huge concrete column will crush him.

The Spaccamonti Property is zoned I-3. (¶ 24.) Pursuant to the Pueblo County Zoning Regulations, Chapter 17.76, I-3 properties must be surrounded by fences or other barriers on all sides to prevent nuisance and/or harm to abutting property owners. However, there is not a fence separating Plaintiff's Property from Spaccamonti's Property, and even if there were, a fence would not support the weight of this waste. (¶

4

25.)

### D. City Involvement

In October 2020, Hayden contacted Karen Wilson, Pueblo County Code Enforcement Manager, to inform her of the issue. (¶ 26.) On October 9, 2020, Ms. Wilson and Kyle Aber, acting attorney for Code Enforcement at the time, inspected Plaintiff's Property. (¶ 26.)

Ms. Wilson drafted an inter-departmental memorandum on August 3, 2021. In her memorandum, Ms. Wilson states, "As we got to the rear of the property, we could see large hills of dirt and asphalt. None of it appeared to be new deposits. This is a situation that had been happening for years." (¶ 26.)

Ms. Wilson then explained how she had visited the Spaccamonti Property and spoke with Mr. Spaccamonti. (¶ 26.) She states, "As we walked in there had been a dirt road cut, and piles of dirt, rock and gravel can be seen. As we got deeper into the parcel, we can see where there are tractor tracks that have been moving dirt. I could see where trees and limbs had been knocked over etc. Still unable to determine property boundaries and unable to determine if this was allowed or not, since it was a very common practice for quite a long time. In looking at a map, it doesn't appear that the dumping of dirt and asphalt is on Mr. Hayden's property." (¶ 26.) Ms. Wilson went on to explain that the issues were outside the scope of what Code Enforcement and Municipal Code handles. (¶ 26.)

In an e-mail to Ms. Wilson on November 2, 2020, Jim Kirchner, Stormwater Inspector for City of Pueblo, stated, "By my calculations, I figure about 16,000 sq of what used to be a ravine has been filled in. Since there isn't a special use permit is there something that Code Enforcement is doing? I don't want to interfere with what you

5

may have going on, but I will need him to make some improvements to this property to make it compliant with state and federal regulations, in part the 1987 Clean Water Act." (¶ 27.)

The FAC recites the contents of other letters from various government entities. (¶¶ 28–30.)  Hayden alleges that he has spent thousands of dollars cleaning up his Property, only to have the issue recur.  (¶ 31.)  He further alleges that from 2015 to present, with knowledge of the Ordinance, Defendants have failed to enforce Pueblo County and City regulations to stop the illegal dumping of waste adjacent to and on his Property.  Hayden alleges that he has been damaged by the acts of the Defendants and is seeking a preliminary[3] and permanent injunction, as well as damages in an amount of $1,000,000.  (¶ 33.)

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk*, 493 F.3d at 1177.  Thus, in ruling on a Motion to

---

[3] As of the date of this Order, Hayden has not filed a motion for preliminary injunction in this case, so the Court has not addressed this matter.

Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).  However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. ANALYSIS

The Colorado Constitution declares that "property shall not be taken or damaged, for public or private use, without just compensation."  Colo. Const. art. II, § 15.  Normally this provision is given effect through eminent domain proceedings instituted by a governmental entity to condemn a piece of private property.  *See Race v. Bd. of Commissioners of the Cnty. of Lake, Colorado*, 2017 WL 3334647, at *6 (D. Colo. Aug. 4, 2017).  However, sometimes a governmental entity takes private property without

going through the eminent domain process, thus forcing the private landowner to bring "the mirror-image of an eminent domain proceeding," known as an inverse condemnation claim. *Fowler Irrevocable Tr. 1992-1 v. City of Boulder*, 17 P.3d 797, 802 (Colo. 2001).

"Inverse condemnation and eminent domain actions both proceed under [the Colorado Constitution, art. II, § 15]." *Id*. Inverse condemnation is essentially an action "to compel the State to exercise its power of eminent domain." *Thompson v. City & Cnty. of Denver*, 958 P.2d 525, 527 (Colo. App. 1998). Colorado courts have described an inverse condemnation claim as comprising four elements: "(1) there has been a taking or damaging of a property interest; (2) for a public purpose; (3) without just compensation; (4) by a governmental or public entity that has the power of eminent domain, but which has refused to exercise that power." *Scott v. Cnty. of Custer*, 178 P.3d 1240, 1244 (Colo. App. 2007).

In its Motion, the City argues that

> [a]s a preliminary matter, Plaintiff has failed to show a taking by a government entity. Plaintiff admits the City deeded the Spaccamonti Property to Defendant Spaccamonti in 2015 and alleges that from 2015 to present, Defendant Spaccamonti has been illegally dumping waste on Plaintiff's Property. Amended Complaint at ¶¶ 18, 20. The fact that Defendant Spaccamonti "advertises on its website that it performs work for the City," *id*. at ¶ 21, is insufficient to establish a taking by the City itself for the purposes of an inverse condemnation claim.

(ECF No. 104 at 8.) Quite simply, the Court agrees. The last element of Hayden's inverse condemnation claim requires that "a government or public entity" did the taking. Hayden's allegations and arguments that the illegal dumping has been a "natural and probable consequence of the City's acts, as it has failed to enforce the Improvement

8

Agreement and Ordinance and has allowed the illegal dumping onto Plaintiff's property" (ECF No. 109 at 6) do not bridge the gap between illegal dumping actions allegedly engaged in by Spaccamonti and imputing legal responsibility to the City.  As the City argues in its reply, "despite the apparent characterization of the deeding of property to Defendant Spaccamonti as a 'taking,' it is clear from the allegations that following the deeding, none of the actions that purportedly impacted Plaintiff's land were taken by the City."  (ECF No. 110 at 2.)  Moreover, the City asserts that "[d]eeding public property to a private party who then allegedly takes actions that impacts neighboring land cannot be a 'taking' for purposes of an inverse condemnation claim."  (*Id.*)  The Court is persuaded by the City's succinct argument.

Further thwarting Hayden's argument is the fact that he cites no case law supporting his theory that the *City* is somehow legally responsible for *Spaccamonti's* alleged actions.  (*See* ECF No. 109 at 4–7.)  Therefore, the Court finds that Hayden has failed to sufficiently allege facts supporting the fourth element of his inverse condemnation claim.

Additionally, the Court finds deficiencies with the alleged facts supporting the second—"public purpose"—element of Hayden's inverse condemnation claim against the City.  Hayden contends that "[t]he City has been complicit in the planning and intention to dump on [his] Property, in order to serve its initial public purpose of improving the Deeded Property and the impact it had on adjacent property."  (ECF No. 109 at 6.)  However, even assuming Spaccamonti's alleged illegal dumping was a direct, natural, or probable consequence of the City's deeding of the property to Spaccamonti, it is not reasonable to infer that any later negative impact on the deeded

9

property or Hayden's property was *intended* to serve a public purpose. (*See* ECF No. 110 at 3.)

Based on the operative FAC, the Court concludes that as currently pled, Hayden's allegations are merely an effort to hold the City responsible for a private party's alleged actions, and are far too attenuated to confer liability on the City. However, this Order is the first time the Court has addressed this matter, and therefore, the Court dismisses Hayden's inverse condemnation claim without prejudice.[4]

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Motion (ECF No. 104) is GRANTED; and

2. Hayden's inverse condemnation claim against the City is DISMISSED WITHOUT PREJUDICE.

Dated this 28th day of August, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge

---

[4] The City also moves to dismiss Hayden's inverse condemnation claim based on the statute of limitations and diversity jurisdiction. The City withdrew its argument contesting the Court's diversity jurisdiction, and therefore, the Court addresses it no further. (ECF No. 110 at 1.) Given that the Court dismisses the inverse condemnation claim against the City without prejudice, the Court declines to address the City's statute of limitations argument in this Order but will take it up at a later juncture of this litigation if appropriate.